Leigh **CARNWATH**, et al.

v.

Nancy S. **GRASMICK**, et al.

No. CIV.JFM–99–3504.

United States District Court,
D. Maryland.

Sept. 15, 2000.

Julie Ann Starbuck, Holly Lynn Parker, Eig, Parker and Starbuck, Kensington, MD, for Plaintiff.

J. Joseph Curran, Jr., Barbara Strong Goss, Office of Atty. General, Baltimore, MD, for P. Tyson Bennett, Manisha S. Kavadi, Reese & Carney, Annapolis, MD, for Defendants.

## MEMORANDUM OPINION

MOTZ, District Judge.

This case is before the Court on a motion to dismiss, or in the alternative, for summary judgment filed by Nancy S. Grasmick and the Maryland State Department of Education ["State Defendants"],

and a motion for summary judgment filed by Carol S. Parham and the Board of Education of Anne Arundel County ["Local Defendants"]. The Plaintiffs, Leigh Carnwath and her parents, Cheryl and John Carnwath ["the Carnwaths"], claim that State Defendants and Local Defendants violated the Individuals with Disabilities Education Act ["IDEA"], 20 U.S.C. § 1400 *et seq.*, the Rehabilitation Act, and 42 U.S.C. § 1983 by failing to follow mandatory procedures and denying Leigh Carnwath a free appropriate public education ["FAPE"]. In the present suit, Plaintiffs seek review of the May 24, 1999, final order issued by an Administrative Law Judge ["ALJ"] rejecting their claims. For the reasons that follow, the motions will be granted.

### I.

Leigh Carnwath is a disabled child who suffers from a severe language disability. From kindergarten through the fourth grade, Leigh attended the Broadneck Elementary School ["Broadneck"], operated by Anne Arundel County Public Schools ["AACPS"]. During the 1996–97 school year, when Leigh was a fourth-grader, her individualized education plan ["IEP"] entitled her to receive special education services at Broadneck. Over the course of that school year, several Admission, Review and Dismissal ["ARD"] meetings were held to draft Leigh's IEP for the 1997–98 school year. The Carnwaths rejected the school's IEP and filed a request for a due process hearing on July 22, 1997. They subsequently enrolled Leigh at the private Summit School, at their own expense, where she began classes on September 2, 1997.

Although the due process hearing was initially scheduled for August 19, 1997, the Office of Administrative Hearings postponed it due to the death of an ALJ. The parties agreed to reschedule the hearing for September 23 and 24, 1997. The ALJ convened the hearing on September 23, 1997, and Local Defendants moved to dis-

miss the complaint on the grounds that Plaintiffs had failed to ·follow applicable notice procedures. The ALJ granted the motion and dismissed the complaint by an opinion issued October 31, 1997. Plaintiffs filed suit in this court on December 5, 1997, seeking review of the ALJ's ruling. After finding that the IDEA and State law notice provisions did not apply to Plaintiffs, I remanded the case to the ALJ for further proceedings. *See Carnwath v. Board of Educ. of Anne Arundel Cty.,* 33 F.Supp.2d 431 (D.Md.1998). The ALJ convened a new due process hearing on May 18–19, 1999, and issued a final order on May 24, 1999, denying Plaintiffs' claims.

The current action seeks review of the ALJ's final order. Specifically, Plaintiffs assert the following six counts for relief: (I) defendants failed to provide Leigh with FAPE; (II) the ALJ committed error and violated Plaintiffs' due process rights by failing to compel the production of evidence and failing to consider relevant evidence; (III) defendants failed to provide adequate due process procedures, including a hearing before a knowledgeable and competent ALJ; (IV) defendants failed to provide for a timely determination of Plaintiffs' claim; (V) defendants failed to fund and place Leigh; and (VI) defendants failed to evaluate Leigh in a timely and appropriate manner.[1] In response, State Defendants claim they are entitled to judgment as a matter of law because Plaintiffs have failed to set forth evidence that the State was responsible for denying Leigh FAPE. Local Defendants contend that they are entitled to summary judgment because the ALJ was correct in finding that Leigh was offered FAPE.

## II.

■ Federal district courts have jurisdiction under IDEA to review the findings and legal rulings of the ALJ. 20 U.S.C. § 1415(i)(2). The party challenging the ALJ's decision bears the burden of proof. *See Barnett v. Fairfax Cty. School Bd.,*

927 F.2d 146, 152 (4th Cir.1991). Although my decision must be based on the preponderance of the evidence, 20 U.S.C. § 1415(i)(2)(B)(iii), I must also give "due weight to the state administrative proceedings." *Sanger v. Montgomery Cty. Bd. of Educ.,* 916 F.Supp. 518, 520 (D.Md.1996). Furthermore, the ALJ's factual findings "are entitled to be considered prima facie correct," and it is incumbent upon me to explain any departures from those findings. *Doyle v. Arlington Cty. School Bd.,* 953 F.2d 100, 103–05 (4th Cir.1991). This deference also extends to the ALJ's rulings as to whether IDEA's procedural requirements were met. *See Sanger,* 916 F.Supp. at 521.

Under IDEA, "[t]he State educational agency is responsible for assuring that the requirements of this subchapter are met." 20 U.S.C. § 1412(a)(11)(A)(i). The State Educational Agency ["SEA"], therefore, bears the ultimate responsibility "to ensure that each child within its jurisdiction is provided a free appropriate public education." *Gadsby v. Grasmick,* 109 F.3d 940, 952 (4th Cir.1997). Accordingly, "an SEA may be held responsible if it fails to comply with its duty to assure that IDEA's substantive requirements are implemented." *Id.* IDEA's broad remedial provision authorizes the district court to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii). This language "confers broad discretion on the court" to fashion the appropriate equitable relief "after considering all relevant factors." *Gadsby,* 109 F.3d at 955. In cases where the SEA is potentially liable along with the Local Educational Agency ["LEA"], the district court must consider the "relative responsibility of each agency for the ultimate failure to provide a child with a free appropriate public education." *Id.* If the LEA is "primarily responsible for the failure," the court must recognize that "it would be unfair to hold the SEA liable for reimbursement costs of private school tuition...." *Id.*

---

1. Each count alleges a violation of IDEA and Maryland law. Counts I, III, and IV also

allege violations of the Rehabilitation Act and 42 U.S.C. § 1983.

### III.

In Count II of the complaint, Plaintiffs allege that the ALJ committed errors of law in connection with certain evidentiary rulings. State Defendants are entitled to dismissal on this claim because the ALJ's mistakes of law do not impute liability to the State. *See Cavanagh v. Grasmick,* Civ. No. AMD 98–3400 at 31–32 (D.Md. Nov. 24, 1999); *Garrett v. Vance,* Civ. No. DKC–97–3699 at 4–5 (D.Md. Nov. 1, 1999); *Jacobsen v. Anne Arundel Cty. Bd. of Educ.,* Civ. No. 97–2016 at 10–11 (D.Md. May 6, 1999); *Fox v. Montgomery Cty. Bd. of Educ.,* Civ. No. AMD 98–200 at 6–9 (D.Md. Jan. 21, 1999); *Fritschle v. Andes,* 25 F.Supp.2d 699, 704–05 (D.Md. 1998). Local Defendants are also entitled to summary judgment on this claim because IDEA does not make LEAs responsible for ALJ errors.

Plaintiffs argue, however, that summary judgment is not appropriate because they "have not been permitted to engage in the discovery process allowed by law." Pls.' Opp'n to Local Defs.' Mot. at 8. In particular, Plaintiffs allege that Local Defendants failed to respond to discovery requests and the ALJ improperly refused to compel production of the requested documents. On January 19, 1999, Plaintiffs served Local Defendants with a request for production of documents seeking (1) "IEP's from all students with whom Leigh Carnwath would have been placed in an class during the 1997–98 and 1998–99 school years," (2) "[a]ll educational, psychological, speech and language, and occupational therapy evaluations for [these] students," (3) "[a]ll documents in the school system's possession pertaining to Leigh Carnwath," and (4) the curricula vitae of various school system employees involved with Leigh's case.' *Id.* ex. 1.

In response, Local Defendants provided redacted IEPs for eight students "who would have been or could have been in classes" with Leigh for the 1997–98 school year. *Id.* ex. 2. Although other students could have been in Leigh's classes that year, Local Defendants noted that "there are no other such students who currently are attending the Anne Arundel County Public Schools." *Id.* ex. 2. Local Defendants refused to provide IEPs for the 1998–99 school year because that year was not at issue in the claim and it would be "impossible to determine with any reasonable degree of certainty" which students would have been in Leigh's classes due to "factors such as middle school scheduling and course selection." *Id.* ex. 2. Local Defendants also refused to provide documents in response to request (2) claiming the evaluations to be immaterial and private. In response to request (3), Local Defendants noted that Plaintiffs had withdrawn from Broadneck prior to the 1997–98 school year and, therefore, no new student documents had been generated other than those in connection with the current litigation. Finally, Local Defendants noted that the school did not maintain the requested curricula vitae.

I find that additional discovery is not necessary in this case because Local Defendants fulfilled their duty in response to the document request. The school district was not required to provide the educational, psychological, speech and language, and occupational therapy evaluations for the students who could have been in Leigh's classes because those evaluations were irrelevant to the individual determination of whether Leigh's IEP was appropriate. *See Meade v. Vance,* Civ. No. MJG–98–2655 at 14–15 (D.Md. Apr. 1, 1999). Notably, AACPS provided redacted IEPs for eight students who could have been in Leigh's classes, thereby supplying sufficient background information about the capabilities and needs of those students to determine whether Leigh would have benefitted from the placement.[2] *See Evans v. Board of Educ. of Rhinebeck Cent. School*

---

2. By concluding that Local Defendants met their duty here, I do not intend to establish a general rule requiring school districts to supply IEPs for all students who could have been in the child's classes.

*Dist.,* 930 F.Supp. 83, 100 (S.D.N.Y.1996). Plaintiffs did not seek to compel disclosure of Leigh's records and the curricula vitae, most likely because doing so would have been fruitless—Local Defendants stated that they either had disclosed or did not keep such information. Absent any reason to question these assertions, I find that Local Defendants complied with the relevant discovery guidelines and the ALJ did not err in failing to compel disclosure of the requested documents.

In addition, there is no merit in Plaintiffs' contention that I must consider "additional evidence," *see* 20 U.S.C. § 1415(i)(2)(B)(ii), before ruling on the present motion for summary judgment. Plaintiffs cite the need to obtain "additional or complete information regarding a request for a formal investigation that was filed with the United States Department of Education on December 5, 1999." Pls.' Opp'n to Local Defs.' Mot. at 13–14. This request was apparently filed by another parent who is seeking an investigation into legal violations in the application of Md. Code. Ann. Educ. § 8–413(i). However, because I have already determined that the notice provisions of § 8–413(i) did not apply to Plaintiffs, *see Carnwath,* 33 F.Supp.2d at 433, the investigation is not relevant to the present proceedings. In any event, I have just been advised by counsel for State Defendants that the investigation has now been closed.

## IV.

■ Plaintiffs also seek to hold State Defendants liable for failing to provide adequate due process procedures, including a hearing before a knowledgeable, competent hearing officer, and a timely administrative determination of their IDEA claim. *See* Compl. Counts III and IV. In the context of SEA liability for due process violations, it is important to distinguish between a failure to establish procedures and a failure to follow them. *See Cavanagh v. Grasmick,* Civ. No. AMD–98–3400 at 22 (D.Md. Nov. 24, 1999); *see also Gadsby,* 109 F.3d at 954 (noting that the SEA is responsible for "establishing poli-cies and procedures to ensure local compliance with IDEA."). The SEA may incur liability for a failure to establish adequate procedures where the state's procedures do not comport with due process requirements. *See Cavanagh,* Civ. No. AMD–98–3400 at 22. However, because the Maryland State Department of Education has already demonstrated to the Secretary of Education that its policies and procedures meet the due process requirements of 20 U.S.C. § 1415, Plaintiffs face a "significant burden" in showing the inadequacy of those procedures. *Id.* at 22–23.

■ The SEA may also be liable where its own failure to follow the procedural requirements of the IDEA leads to denial of FAPE. *See Gadsby,* 109 F.3d at 955. The critical point, however, is that the SEA may not be held liable where it was not responsible for the procedural failure. *See Cavanagh,* Civ. No. AMD 98–3400 at 22–23; *Garrett v. Vance,* Civ. No. DKC–97–3699 at 4–5 (D.Md. Nov. 1, 1999); *Gadsby v. Amprey,* Civ. No. MJG–95–939 at 16 (D.Md. Apr. 13, 1998); *Gordon v. Board of Educ. of Howard Cty.,* 22 F.Supp.2d 499, 501 (D.Md.1998). In other words, contrary to Plaintiffs' assertion, IDEA does not create a type of respondeat superior liability, imputing liability to SEAs for every local deviation from the State-created standards. *See Gadsby,* 109 F.3d at 955; *Beard v. Teska,* 31 F.3d 942, 954 (10th Cir.1994)(noting that SEA responsibility under IDEA "does not turn every 'local educational agency' under the statute … into the agent of the 'State educational agency' as a matter of federal law, so that the latter automatically becomes liable for all transgressions of the former."). To establish State Defendants' liability on Count III, therefore, Plaintiffs must show either that the SEA was directly involved and responsible for the denial of FAPE, or that the State-established standards fail to provide due process despite approval by the Secretary of Education.

■ Plaintiffs' claims fail on both counts. Their claim involving the ALJ's

knowledge and competence must be dismissed because there is no federal right to a competent or knowledgeable ALJ. *See Jacobsen v. Anne Arundel Cty. Bd. of Educ.*, Civ. No. 97–2016 at 14 (D.Md. May 6, 1999). Indeed, claims alleging "a lack of competence and training" on the part of ALJs are "essentially state law claims" barred by the Eleventh Amendment.[3] *Cavanagh*, Civ. No. AMD 98–3400 at 30. In any event, Plaintiffs have failed to set forth any evidence impeaching the ALJ's abilities in this case. Count III, therefore, will be dismissed as to State Defendants.[4]

## V.

Count IV fails for different reasons. It is undisputed that IDEA's implementing regulations require the public agency to reach a final decision within 45 days of receipt of a hearing request. *See* 34 C.F.R. § 300.511. In contrast to the knowledge and competence claim in Count III, the 45–day provision represents a federal requirement embodied in IDEA regulations. Accordingly, violation of this requirement would give rise to a federal claim not barred by the Eleventh Amendment.[5] Nevertheless, to hold State Defendants liable, Plaintiffs bear the substantial burden of proving either that the State was primarily responsible for the delay or that the State's implementation of the 45–day requirement fails to provide due process.

■ Plaintiffs have not met their burden. As noted, liability for a violation of procedural requirements will not fall on the State absent some responsibility for the violation. Given that the failure of an ALJ to abide by the 45–day restriction does not impute liability to the State, *see, e.g., Cavanagh*, Civ. No. AMD 98–3400 at 31–32, Plaintiffs can only hold State Defendants liable by proving some State involvement in the delay. On this point, Plaintiffs assert that the initial delay (from August 19, 1997, to September 23, 1997) was the result of State Defendants' inability to find an ALJ to hear the case.[6] *See* Compl. ¶ 22; Pls.' Opp'n to State Defs.' Mot. at 2–3. However, the ALJ found that Plaintiffs did not object to the original postponement, their counsel indicated that he was going to ask for a postponement anyway, and the Carnwaths were not available for another hearing until September 23, 1997. *See* ALJ's Decision & Order, OAH No. 97–MSDE–AARU–OT–024065 at 9, 12–13 (May 24, 1999). Plaintiffs object to the ALJ's conclusion that they waived their right to a timely hearing, *see* Pls.' Opp'n to State Defs.' Mot. at 15–16, but they have failed to identify evidence that would cause me to question the ALJ's factual findings.[7] As such, I fail to see how Plaintiffs can claim prejudice from the initial delay. More important, even if Plaintiffs did not consent to the delay, they have provided no evidence implicating the State in the postponement. Their claim, therefore, must fail.

■ Furthermore, Plaintiffs have failed to show that State Defendants' implementation of the IDEA deprived them of due process. As an initial matter, State Defendants substantially fulfilled their IDEA duty by *requiring* that the 45–day period be met. *See* Md.Code

---

3. Although Maryland law does entitle litigants to an ALJ with specialized training, this claim has already been dismissed on Eleventh Amendment grounds. *See Carnwath*, 33 F.Supp.2d at 434.

4. I will also dismiss Count III as it applies to Local Defendants. In addition to the lack of any serious evidence showing that the ALJ was incompetent or lacked the requisite training, there is nothing in IDEA that would make Local Defendants responsible for the ALJ's competence or training in this case.

5. To the extent that this claim alleges a failure to comply with state law, it is barred by the Eleventh Amendment. *See Carnwath*, 33 F.Supp.2d at 434.

6. Plaintiffs failed to allege any facts implicating State Defendants in subsequent delays.

7. Notably, Plaintiffs do not deny that counsel was going to seek a postponement or that they were unavailable for a second hearing between August 19 and September 23.

Ann., Educ. § 8–413(d)(1); COMAR 13A.05.01.15.C. Plaintiffs contend, however, that the State's procedures violated due process by failing to anticipate the problem that occurred in this case. In particular, Plaintiffs assert that the delay in Leigh's hearing is attributable to State Defendants because the latter failed to provide guidance or direction on how to avoid delays when an ALJ is faced with a motion to dismiss. As a result, when the ALJ granted the Local Defendants' motion to dismiss on November 5, 1997, the Carnwaths were forced to pursue their claim in federal court, return to the administrative process on remand, and receive an untimely final decision on May 24, 1999. Plaintiffs claim that this delay could have been avoided had the ALJ taken testimony and received evidence on the Carnwaths' other issues and rendered a bifurcated determination. In addition, they contend that the ALJ would not have been barred from deciding these other issues had the Local Defendants' legal assertions been correct. The State Defendants' failure to provide guidance for these types of situations, Plaintiffs argue, renders the State liable.

Despite this attempt to shift liability to State Defendants, it is evident that Plaintiffs were aggrieved either by the Local Defendants' filing of the motion to dismiss, the ALJ's granting of the motion, or both. In any case, however, it is clear that the State was not responsible. As discussed earlier, the State may not be held liable for errors of the ALJ. Moreover, the State may not intercede in administrative hearings or overturn the decision of the ALJ because doing so would undermine the goal of impartial hearings. *See Garrett v. Vance*, Civ. No. DKC–97–3699 at 5 (D.Md. Nov. 1, 1999). Furthermore, on the facts of this case, I refuse to hold the State liable for a failure to foresee and preclude by regulation any potential delay resulting from an ALJ's legal or procedural errors.

Accordingly, this claim will be dismissed as to State Defendants.

▆ In addition, Local Defendants are entitled to summary judgment on Count IV because they were not responsible for the delay. To establish the Local Defendants' liability, Plaintiffs must demonstrate that Local Defendants were primarily responsible for the procedural violation. *See Gadsby*, 109 F.3d at 955. Here, the only identifiable grounds for implicating Local Defendants in the delay is their decision to file a motion to dismiss in the first administrative hearing. Local Defendants' motion reasonably, though incorrectly, relied on Plaintiffs' failure to meet the notice provisions of Md.Code Ann., Educ. § 8–413(i). The ALJ granted the motion to dismiss, which I reversed. *See Carnwath*, 33 F.Supp.2d at 433. On remand, the ALJ addressed the issue as follows:

> While [Anne Arundel Public Schools] may have asserted factual or legal inaccuracies, that does not mean they deliberately attempted to obstruct the hearing process. I obviously thought the facts and the argument were meritorious because I granted the school system's motion based on the notice provision in Md.Code Ann., Educ. § 8–413 (1997). Although Judge Motz remanded the case because he found that notice provision did not apply to the Parents, his ruling does not indicate that the school system's motion was in any way fallacious. [Anne Arundel Public Schools] asserted a legitimate defense (albeit incorrect) before the hearing as it is entitled to do by COMAR 28.02.01.16 and the resulting delay in the hearing was not a procedural violation.

ALJ's Decision & Order, OAH No. 97–MSDE–AARU–OT–024065 at 13 (May 24, 1999). Because I agree that Local Defendants' defense was reasonable and that they were entitled to raise it, Local Defendants cannot be held responsible for the delay in the administrative decision.[8]

---

8. Even if it would be equitable to hold either the SEA or LEA responsible for the delay in Leigh's case, Plaintiffs would bear the additional burden of showing that the procedural violation "actually interfere[d] with the provision of a free appropriate public education,"

Moreover, as discussed earlier, Plaintiffs may not claim prejudice from the initial delay given that they did not object to the original postponement, their counsel indicated that he was going to ask for a postponement anyway, and they were not available for another hearing until September 23, 1997. *See* ALJ's Decision & Order, OAH No. 97–MSDE–AARU–OT–024065 at 9, 12–13 (May 24, 1999). Because Plaintiffs have also failed to demonstrate that Local Defendants were responsible for any delays upon remand, I find that Local Defendants are entitled to dismissal on this claim.

## VI.

■ Plaintiffs seek to hold State Defendants liable for failing to evaluate, place, fund, and provide Leigh with FAPE. *See* Compl. Counts I, V, VI. To avoid dismissal of these claims, Plaintiffs must set forth some evidence showing that State Defendants, by their involvement in Leigh's case, share substantial responsibility for the failure to provide Leigh with FAPE. *See Cavanagh,* Civ. No. AMD 98–3400 at 22–23; *Garrett,* Civ. No. DKC–97–3699 at 5; *Gadsby v. Amprey,* Civ. No. MJG–95–939 at 16 (D.Md. Apr. 13, 1998); *Gordon v. Board of Educ. of Howard Cty.,* 22 F.Supp.2d 499, 501 (D.Md.1998). A natural corollary of this rule is that the State will not be liable in situations where it was neither notified of the relevant decisions nor involved in those decisions in the first place. *See Garrett,* Civ. No. DKC–97–3699 at 5; *Gadsby,* Civ. No. MJG–95–939 at 16; *Podolak v. Vance,* Civ. No.

WMN–97–3663 at 2 (D.Md. Mar. 23, 1998); *Gordon,* 22 F.Supp.2d at 501.

Because the LEA is responsible for direct provision of services under IDEA, including IEP development, *see Gadsby,* 109 F.3d at 943; 20 U.S.C. § 1414(d)(1), failures in this area are normally attributable to the LEA, *see Podolak,* Civ. No. WMN–97–3663 at 2. This case is no exception. There is no evidence that State Defendants were involved in the IEP process, notified of relevant decisions, or asked to participate in Leigh's assessment or placement.[9] Similarly, the record indicates that State Defendants were never called upon to fund Leigh's education or to respond to complaints regarding Leigh's program prior to the filing of the initial state hearing. Indeed, Plaintiffs did not name State Defendants until they initially filed suit in this court. Given the circumstances, I find that State Defendants were not involved, and therefore, bear no responsibility for denying Leigh FAPE prior to the first complaint. Plaintiffs' only argument for holding the State liable for denial of FAPE subsequent to the first complaint involves the alleged errors of the ALJ, which, as noted, may not impute liability to the State. Accordingly, Counts I, V, and VI will be dismissed insofar as they apply to State Defendants.

## VII.

■ In contrast to State Defendants, Local Defendants were closely involved with the development of Leigh's educational program. In light of this involvement,

---

Gadsby, 109 F.3d at 956, by denying the child an educational opportunity, *see Burke Cty. Bd. of Educ. v. Denton,* 895 F.2d 973, 982 (4th Cir.1990). As the ALJ noted, such a showing would be difficult in this case considering the availability of retroactive reimbursement for private schooling. *See* ALJ's Decision & Order, OAH No. 97–MSDE–AARU–OT–024065 at 13 (May 24, 1999). Although Plaintiffs contend that a timely determination would have given them sufficient time to make placement determinations for the 1997–98 school year, and "IDEA never intended for the parents to incur [the risk of not being

reimbursed] for two school years," Pls.' Opp'n to State Defs.' Mot. at 13, a decision in their favor would essentially make them whole through reimbursement. As such, it is difficult to see how Plaintiffs were prejudiced by the delay or lost any educational opportunity.

9. State Defendants have provided a declaration from the Maryland State Department of Education attesting that it was never asked to participate in Leigh's IEP or placement process. *See* State Defs.' Mot. to Dismiss ex. 9.

Plaintiffs claim that Local Defendants violated IDEA by failing to evaluate, place, fund, and provide Leigh with FAPE. *See* Compl. Counts I, V, VI. Despite these broad allegations, Plaintiffs have identified only two substantive claims that they believe create a material dispute of fact. Specifically, they assert that Local Defendants proposed an IEP "with a sound equalization system (that was not in place) and Lindamood Bell instruction to address Leigh's phonological awareness difficulties, even though AACPS did not employ a certified instructor." Pls.' Opp'n to Local Defs.' Mot. at 6. Plaintiffs assert that the absence of the sound equalization system and a certified Lindamood instructor demonstrates that Local Defendants were not ready or able to implement the program proposed for Leigh. *See* Compl. ¶ 36.

Both issues are addressed in the ALJ's final decision. The ALJ first found that Dr. Linda Spencer performed Leigh's speech and language assessment in July 1997. *See* ALJ's Decision & Order, OAH No. 97–MSDE–AARU–OT–024065 (May 24, 1999), Finding of Fact ["FOF"] 18. As a result of the assessment, Dr. Spencer recommended that Leigh not be placed in an open space classroom and that she participate in a phonological processing program such as the Lindamood program. *Id.* FOF 24. Accordingly, Leigh's IEP was designed with modifications for the addition of sound equalization equipment and training of staff for Lindamood. *Id.* FOF 30. In lieu of a self-contained classroom, AACPS proposed that Leigh's classrooms be equipped with a sound field equalization system; however, the sound field equalization system was not installed at Broadneck prior to the start of the 1997–98 school year. *Id.* FOF 25–26. The ARD Committee decided to begin the Lindamood Program during the summer preceding the 1997–98 school year and secured a private provider certified in that methodology to begin work on phonemic intervention. *Id.* FOF 33. However, no staff at Broadneck Elementary were trained or certified in the Lindamood Pro-

gram prior to the beginning of the 1997–98 school year. *Id.* FOF 34.

In consideration of these facts, the ALJ concluded that "the evidence showed [AACPS was] prepared to implement the Lindamood Program." *Id.* at 19. Furthermore, even though there were no staff trained in the program, "there was no evidence AAPS would not have had it in place or that it would not have trained the appropriate staff had the Child attended Broadneck. Ms. [Susan] Murnane [a speech and language pathologist with AACPS] also testified that funding for training is driven by IEP's and when they found out the Child was not coming, she delayed the training." *Id.* Plaintiffs have provided no evidence that would cause me to doubt the validity of the ALJ's factual findings, so I accept them in full. In light of these facts, I find that the ALJ gave due consideration to the issue and reasonably concluded from the evidence that Local Defendants were sufficiently prepared to offer the Lindamood Program in accordance with Leigh's IEP for the 1997–98 school year.

Similarly, the ALJ concluded that "the record supports the ARD Committee's determination that Broadneck was the least restrictive setting to implement the IEP and the Child could be accommodated in the regular classroom with modifications, including use of the sound field equalization system. . . . [T]here is nothing to show that the sound field equalization system was inappropriate and would not benefit the Child. . . . [Ms. Murnane] stated it would have been installed in each instructional area used by the Child." *Id.* at 22. Again, Plaintiffs have provided no evidence to undermine the ALJ's factual findings. Instead, they simply assert that the "ALJ failed to explain how AACPS was ready, willing and able to provide Leigh with the FAPE it had offered, when the elements of the program were not in place at the beginning of the school year." Pls.' Opp'n to Local Defs.' Mot. at 8. I disagree. The ALJ found that the IEP and incorpo-

rated sound modifications were appropriate, and that Local Defendants would have installed the sound system prior to Leigh's enrollment for the 1997–98 school year. Certainly, it would strain common sense to require a school system to install such a system months in advance of the school year only to prove its intent to honor the IEP. Absent any evidence to indicate that Local Defendants were unwilling or unable to install the sound system, I have no reason to disturb the ALJ's conclusions. Because Plaintiffs have failed to identify any actions of the Local Defendants that may have contributed to denial of FAPE,[10] Claims I, V, and VI will be dismissed.

## VIII.

For these reasons, I will grant the motions and enter judgment in favor of State Defendants and Local Defendants.[11]

### ORDER

In accordance with the attached Memorandum, it is this *1st* day of September 2000, by the United States District Court for the District of Maryland, ORDERED:

1. That State Defendants' Motion to Dismiss or in the Alternative for Summary Judgment BE, and the same IS, hereby GRANTED;

2. That Local Defendants' Motion for Summary Judgment BE, and the same IS, hereby GRANTED;

3. That JUDGMENT BE ENTERED in favor of State Defendants and Local Defendants;

4. That the Clerk close this case; and

5. That copies of this Memorandum and Order be mailed to counsel for the parties.

---

10. Although Plaintiffs asserted in Count VI that Local Defendants failed to assess Leigh in a timely and appropriate manner, the ALJ rejected this contention. Plaintiffs have provided no evidence or argument impugning the ALJ's determination; therefore, Count VI must be dismissed.

11. Plaintiffs' Rehabilitation Act claims are identical to their IDEA claims; therefore, they will also be dismissed. *See Jones v. Board of Educ. of Washington Cty.,* 15 F.Supp.2d 783, 787 (D.Md.1998). Because no violations of federal rights remain, Plaintiffs' section 1983 claims must also be dismissed. *See id.*